(118 App. Div. 793)

## PEOPLE v. BROWNE.

(Supreme Court, Appellate Division, First Department. April 19, 1907.)

1. FORGERY—BURDEN OF PROOF—FICTITIOUS PERSON.

In a prosecution for forgery, where defendant was proved to have personated the title holder in signing and acknowledging a deed, it is not necessary to produce as a witness the person whose name is alleged to have been forged, since, if a fictitious person, he could not sign or authorize signature, and, if a real person, the signing by defendant and lack of authority to do so was proved prima facie by his personating the title holder sufficiently to require defendant to show authority to sign, if any existed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, § 104.]

2. SAME—UTTERING FORGED INSTRUMENT.

In a criminal prosecution on two counts for forgery and uttering a forged deed, where the deed was proved to be a forgery, and the uttering by defendant was conceded, under Pen. Code, § 521, the uttering constitutes forgery in the same degree as though forged by defendant, and it is immaterial under which count defendant was convicted.

3. SAME—APPARENT OPERATION OF INSTRUMENT.

In a prosecution for forgery and uttering a forged deed, the existence of a simultaneous deed by defendant purporting to be signed by the title holder is immaterial, if the deed purported to convey the premises, and was forged and uttered with intent to defraud.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, §§ 28–47.]

4. SAME—QUESTION FOR JURY.

In a prosecution for forgery, evidence examined, and *held* sufficient to take the case to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, § 123.]

5. CRIMINAL LAW—CONTINUANCE—ABSENCE OF WITNESS.

To secure the postponement of a trial on the ground of an absent witness, defendant must show diligence, and that it is probable that the attendance of the witness can be had at the proposed time.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1335, 1339.]

6. SAME—SUFFICIENCY OF EVIDENCE TO SECURE CONTINUANCE.

In a prosecution for forgery, evidence examined, and *held* not sufficient to show diligence and probable ability to secure the attendance of an absent witness.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1335, 1339.]

7. FORGERY—ADMISSIBILITY OF EVIDENCE—INTENT AND KNOWLEDGE.

Evidence as to defendant being a witness to an unrecorded deed produced after the death of the alleged grantor, and purporting to be signed by her mark, though she was an educated woman capable of writing, and as to various subsequent conveyances, the possible fictitious character of the grantees, the negotiations of a mortgage on the property, transactions with the complainant prior to and leading up to the final agreement for

. . the purchase of the property described in the deed, and the fact that various persons could not be found at the address given by defendant, are all competent in a prosecution for forgery and uttering a forged instrument, to show fraudulent intent and guilty knowledge.

    . [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, § 108.]

8. SAME—INSTRUCTIONS—ABSTRACT PROPOSITIONS NOT INVOLVED IN ISSUES.

    In a prosecution for forgery and uttering a forged deed, the claim of the people was that defendant and the alleged grantor were identical, and that defendant had signed the name of the fictitious grantor; but defendant insisted that the grantor was a real person, and had signed the deed himself, that defendant had not taken title in that name, and had not signed the deed in that name as his own, or at all. The court was asked to give instructions as to defendant's innocence, if the persons were identical, or if the defendant had adopted that name or had been authorized to sign it; but the element of intent to defraud was omitted from each of them. *Held*, that the court was justified in refusing to so instruct, since those abstract propositions were not involved in the issues presented, and the element of intent was omitted.

9. SAME—FICTITIOUS NAME—INTENT TO DEFRAUD.

    . It is a crime to forge a fictitious name, if done with intent to defraud.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Forgery, § 26.]

Appeal from Court of General Sessions, New York County.

Henry Huffman Browne was convicted of forgery, and appeals. Affirmed.

See 103 N. Y. Supp. 15.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Clark L. Jordan, for appellant.

E. Crosby Kindelburger, Deputy Asst. Dist. Atty., for the People.

HOUGHTON, J. The indictment under which defendant was tried and convicted of the crime of forgery in the first degree contained a count for forging and another for uttering a deed purporting to convey, as the act of one William R. Hubert, certain real property situated in the county of New York, to complainant Benjamin W. Levitan. A certain tract of land, of which the premises described in the deed were a part, originally belonged, as is conceded, to one Mary Ann Peterson, who, with her entire family, in 1888, was drowned at sea. The defendant, who was a practicing attorney at law, had known Mrs. Peterson in her lifetime, and some while after her death instituted inquiries as to her collateral relatives, and claims to have ascertained that he discovered that one Clark and one Wing were the only heirs to whom the real estate descended upon her death. After these alleged heirs had been thus discovered, it is claimed that one O'Rourke produced an unrecorded deed of the property to himself, signed by Mary Ann Peterson by her mark, although she was an educated woman and could write, to which defendant was a subscribing witness. By six several conveyances, through real or mythical individuals, the title of the alleged heirs and of O'Rourke finally stood in the name of William R. Hubert. Such of the various grantees as were produced upon the trial testified that they held the title for defendant and simply for his accommodation, and the defendant claimed that those grantees who were not produced held it in the same manner, including Hubert himself. The defendant

was the subscribing witness to all of these deeds, except one. Hubert was not sworn upon the trial, and the forging of his name was proved by the notary, who testified that the defendant signed the name "Wm. R. Hubert" in her presence, and acknowledged the execution of the deed, and stated that he always wrote his christening name with the abbreviation which appeared, and that he was Hubert himself, producing letters to show that fact. The tender of the deed to the grantee, Levitan, was confessedly made by the defendant, with excuses for the absence of Hubert. The defendant denied that he personated Hubert in signing and acknowledging the deed, or that he signed the name to it, and testified that the deed was signed by Hubert and given to him for delivery, and that Hubert was not an imaginary person, but a real one, having an office in the city of New York, with mining interests in the West.

It is not a necessity that the person whose name is alleged to have been forged should be produced as a witness and testify that he did not sign the paper and did not authorize the person charged with the crime to sign it. These facts may be proved by other evidence. If Hubert was a fictitious person, of course, he could neither sign nor authorize the signing; and, if he was a real person, the signing by defendant and lack of authority to do so was sufficiently proven prima facie by his personating Hubert in signing and acknowledging the deed. An issue was raised by this evidence which called upon defendant to show authority to sign the deed, if any existed. People v. D'Argencour, 95 N. Y. 624. The people having thus proved that the deed was a forgery, the uttering of it, which concededly was done by the defendant, constituted the crime of forgery in the same degree (Pen. Code, §§ 509, 521), and it therefore made no difference under which count the jury may have found the defendant guilty. Nor did it matter that another deed existed, purporting to be signed by Hubert, conveying the premises to defendant himself. It was immaterial that another deed existed, if the alleged forged deed to Levitan purported to convey the premises and was forged and uttered with intent to defraud. The language of the Penal Code is, "by which any right or interest in the property is or purports to be transferred." The people by their proof made a question of fact upon which it was proper for the jury to pass, and no error was committed by the trial court in refusing to advise the jury to acquit the defendant for lack of proof. It only remains to be considered, therefore, whether any error was committed on the trial which requires a reversal of the conviction.

The defendant urges that the court erred in refusing to grant him a postponement of trial for the purpose of obtaining Hubert as a witness. The defendant was arrested on the 14th day of December, and pleaded to the indictment on the following 18th of January. The trial was called March 12th following, on two days' notice. He had been a practicing lawyer, and he appeared in court without an attorney, stating that he thought he could conduct his own defense, and made his own motion for postponement of the trial on the ground that Hubert was at Goldfield, Nev., and that he had only recently learned of his whereabouts, and that he desired time to procure his attendance. He claimed that he had received a letter showing Hubert's where-

abouts, but that he had destroyed it. The funds of the district attorney's office, by direction of the court, were placed at his disposal for the purpose of telegraphing, and the court announced that the trial might proceed, and that if it became apparent that the witness was needed, and could be located and procured, he would suspend the trial for that purpose. On suggestion of the court, counsel was assigned to defendant, and he appears to have acquiesced in this disposition of the matter; the defendant himself, however, protesting against it. The trial proceeded for four days, and, after the defendant and all the witnesses produced by him had been sworn, the application for postponement was renewed, and the defendant admitted, in answer to interrogatories by the court, that he had made no effort since the opening of the trial to locate or procure the witness, and that it was impossible to get him here except as he might leave the West to come to the East in the course of his business affairs, which the defendant expected would be the case, and that he would arrive within a short time.

What took place in court we may assume to have been treated as a motion upon affidavits. Assuming this, however, we do not think the defendant made a case for postponement, or that the court was guilty of any abuse of discretion in failing to grant the motion. The alleged intimate relations existing between the defendant and Hubert, if he was a real person and actually existed, and the fact that the defendant was a lawyer and knew the necessity of procuring his attendance, bear very materially upon the situation. Although the defendant had been confined in jail, yet he could write and telegraph, and he must have appreciated the necessity of getting in communication with the witness so that his attendance could be procured when the trial was called, and of preserving all evidence relating thereto. No harm came to the defendant by the denial of the motion made at the beginning of the trial. In considering the motion made at the close of the trial, there appeared the additional fact that Hubert was probably a myth, for no witness had ever seen him, aside from the defendant; nor could any trace of him be found at his claimed address. Criminal trials cannot be indefinitely postponed because the defendant asserts that he has material witnesses who cannot then be procured. Certain rules with respect to motions of such character have been established, and it is necessary to show that the party applying for postponement has not been guilty of neglect, and that it is probable that the attendance of the witness can be had at the time to which the trial is proposed to be deferred. People v. Jackson, 111 N. Y. 362, 19 N. E. 54. Under the case made by the defendant for postponement, there was disclosed no probability that the attendance of the witness could be procured at any future day. Even conceding that the defendant had been guilty of no neglect, the postponement was properly refused.

Evidence of the Peterson title and of the various conveyances of that property with which the defendant had been connected, and of the possible fictitious character of the grantees, as well as the Kuntz mortgage on the same property, was competent as tending to show that defendant was engaged in a scheme to defraud, which finally culminat-

ed in the conveyance of a portion of the property to a real purchaser for actual money. Upon a trial for forgery, or for uttering a forged instrument, facts which legitimately tend to show fraudulent intent or guilty knowledge are competent evidence. People v. Dolan, 186 N. Y. 4, 78 N. E. 569; People v. Gaffey, 182 N. Y. 257, 74 N. E. 836; People v. Everhardt, 104 N. Y. 591, 11 N. E. 62. So, too, the transactions had with the complainant Levitan respecting the Peterson deed and the Haines mortgage, prior to and in some degree leading up to the final transaction in which he agreed to buy the property described in the alleged forged deed, were competent to be proved. They tended to show that the defendant so dealt with Levitan as to probably intend to finally defraud him by inducing him to pay for a forged title. Evidence that the various persons could not be found at the addresses which defendant gave was competent. People v. Jones, 106 N. Y. 523, 13 N. E. 93. There is some confusion regarding the address given by the defendant of Samuel Haines; but the jury had all the facts before them, and could determine whether or not investigation was made at the address which defendant gave. If a wrong address was investigated, it could not harm the defendant that the person was not found at that place.

It is insisted that the court erred in refusing to charge several of the requests submitted by the defendant. These requests do not appear to have been read in the presence of the jury, but seem to have been submitted to the court in writing and marked by him. We do not think any error was committed in failing to charge such as were refused. They related mainly to abstract propositions not involved in the issues as presented upon the trial, and involved the question as to whether or not the defendant could be convicted of forgery if he and Hubert were one and the same person, or if he had adopted the name William R. Hubert as a pseudonym, or had been authorized by him to sign his name. There was no defense involving any of these propositions, and no proof upon which any one of them could be found in favor of defendant. There was claim on the part of the people on the trial that Hubert was a fictitious person; but the defendant insisted that he was not, but that he was a real individual who signed and acknowledged the deed in question, and that he himself did not take title in that name as his own, or sign the name to the deed as his own, or sign it at all. If the defendant had taken a different position, and had proved that he took valid title in that name to himself, representing himself, and that he signed and acknowledged the deed under that name, or that Hubert, being a real person, had authorized him to sign his name to the deed, the various requests would have been pertinent to the issue. A court is justified in refusing to charge mere abstract propositions not involved in the issues. People v. Mallon, 116 App. Div. 425, 101 N. Y. Supp. 814. Moreover, the requests were defective in omitting the element of fraudulent intent. It is a crime to forge the name of a purely fictitious person, if it is done with intent to defraud. People v. Jones, supra; Brown v. People, 8 Hun, 562; Pen. Code, §§ 509, 522. The court in his main charge repeatedly told the jury that they must acquit the defendant, if he had

authority to sign Hubert's name, and if there was no intent on his part to defraud by the use of the deed.

In our view the defendant had a fair trial, in which no errors were committed calling for a reversal, and was clearly proven guilty of the crime charged, and the conviction must therefore be affirmed. All concur; INGRAHAM, J., in result.