COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| STEVEN EDWIN STEMBRIDGE, | § | No. 08-07-00181-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 355th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | | of Hood County, Texas |
| | § | |
| Appellee. | | (TC# CR10094) |
| | § | |

**O P I N I O N**

Steven Edwin Stembridge appeals his murder conviction. A jury found him guilty and assessed punishment at 45 years' confinement. Appellant asserts in a single issue that the trial court erred in admitting extraneous conduct by Appellant into evidence in violation of Texas Rule of Evidence 404(b), prejudicing his substantial rights. We affirm the trial court's decision.

David Schermer's body was discovered in Hood County, Texas, floating next to a partially submerged car in Lake Granbury. He had been shot several times at close range. The night before his death, the victim, Appellant, Issac Cantrell, and others were at David Bridges, a.k.a. Dooner's house, smoking methamphetamine. Appellant asked Mr. Cantrell to drive him down the road to "Pork Chop's" house. When they arrived, Appellant knocked on the front door, but no one answered. Appellant got back inside the car, and told Mr. Cantrell to back up. Mr. Cantrell backed the car up and then Appellant began shooting at the house. Afterwards, the two men returned to Dooner's; nothing more was said about the shooting.

Later that night around 4:30 a.m., Appellant asked Mr. Schermer for a ride home.

Appellant claimed that during the car ride, Mr. Schmerer pulled out a gun and fired it in front of his face. According to Appellant's confession, he was in fear of his life when the gun was fired, so he took away Mr. Schermer's gun and shot him in the head. With the car stopped, Appellant moved Mr. Schermer to the back seat. When Mr. Schermer continued to moan in pain, Appellant shot him with the rest of the bullets in the gun. Appellant confessed Mr. Schermer had another gun, which he used to shot Mr. Schermer several more times. He then threw both guns off the Pearl Street Bridge, into Lake Granbury. Appellant, then drove Mr. Schermer's car into the lake and left Mr. Schermer's body in the water.

The Texas Department of Public Safety subsequently found the guns in the lake. The shell casings from the victim's body, as well as, from the shooting at Pork Chop's home matched the guns found in the lake. Appellant was indicted by a grand jury for murder.

The sole issue Appellant presents to the Court is whether the trial court erred in admitting extraneous evidence under Texas Rule of Evidence 404(b), of Appellant shooting at Pork Chop's home hours before Mr. Schemer was killed. Appellant makes three contentions within his single issue: (1) that the shooting at Pork Chop's home had no relevance apart from its tendency to prove conduct in conformity with character; (2) that the introduction of that evidence prejudiced Appellant's substantial rights; and (3) that the admission of extraneous evidence that a defendant has not been convicted of is reversible error. The State contends that the evidence Appellant complains of is not extraneous evidence. The State contends that Appellant claimed self-defense, which allowed the State to show other violent acts where Appellant was an aggressor to prove Appellant's intent to commit murder. Further, the State asserts that the probative value of the evidence outweighed any prejudicial effect associated with the evidence.

-2-

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex.Crim.App. 1991)(Op. on reh'g); *Roberts v. State*, 29 S.W.3d 596, 600 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd). An abuse of discretion occurs only when the trial court's decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Montgomery*, 810 S.W.2d at 391; *Roberts*, 29 S.W.3d at 600. Generally, a defendant's prior crimes or bad acts are inadmissible to prove he has a bad character or a propensity to commit the offense charged. *Montgomery*, 810 S.W.2d at 391. Such evidence, however, may be admissible for other purposes, such as proof of motive, intent, plan, knowledge, or lack of mistake or accident. *Id*. at 387. When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor. *Bradley v. State*, 960 S.W.2d 791, 803 (Tex.App.--El Paso 1997, pet. ref'd), *citing Halliburton v. State*, 528 S.W.2d 216, 217-18 (Tex.Crim.App. 1975).

Under Texas Rules of Evidence, the admissibility of extraneous offenses involves a two-part balancing test: (1) Whether the extraneous misconduct evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and (2) whether the probative value of the evidence is strong enough that it is not substantially outweighed by unfair prejudice. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001).

If the answer is "YES" to both questions, then the evidence is admitted. *Montgomery,* 810 S.W.2d at 388. If the answer is "NO" to either question, then the evidence is excluded. *Id*.

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence." TEX.R.EVID. 401. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R.EVID. 403. Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery*, 810 S.W.2d at 378. Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Id*.

In the instant case, the court concluded that the evidence of Appellant's shooting at Pork Chop's house was relevant to a fact of consequence in the trial, and was not conduct in conformity therewith. The trial court conducted a balancing test and further concluded that the evidence's probative value outweighed any prejudicial effect under Rule 403, and charged the jury with limiting instructions. *See* TEX.R.EVID. 403.

Under step one, we must address whether the shooting by Appellant at Pork Chop's home was relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character. *Montgomery,* 810 S.W.2d at 388. Appellant confessed that he knew Mr. Schermer had another gun aside from the one Mr. Schermer allegedly fired in front of Appellant's face, so he took the second gun and shot Mr. Schermer again. Because Appellant confessed that both guns belonged to Mr. Schermer when shell casings taken from Mr. Schermer's body matched shell casings taken from Pork Chop's house, whether Appellant owned any of the guns used to shoot Mr. Schermer was a material issue in the case. The fact that such matches were confirmed, indicated that the same weapon could have been used in both

instances. Secondly, because Appellant claimed self-defense, his intent and motive were also material issues in the case. In order for a jury to realistically determine whether Appellant was the aggressor and/or possessed a gun used to shoot Mr. Schermer, they had to evaluate that evidence. Therefore, we conclude that the extraneous misconduct by Appellant was relevant to the above material issues, apart from its tendency to prove conduct in conformity therewith. Thus, the answer to question one is, yes.

Moreover, extraneous offenses may be admissible whenever the defendant raises an affirmative defense or raises a defensive issue that negates one of the elements of the offense. *Bradley*, 960 S.W.2d at 803. Here, Appellant claimed he acted in self-defense, which negated the elements of intent and motive needed to convict him for murder. Therefore, he "opened the door" to allow the State to introduce extraneous evidence to rebut his defensive theory, if the evidence's probative value outweighed the danger of unfair prejudice. *Id*. at 803.

Under step two, we must address whether the probative value of the extraneous evidence was substantially outweighed by the danger of unfair prejudice. *Montgomery*, 810 S.W.2d at 388. Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Id*. at 389. The criteria for evaluating the danger of unfair prejudice includes: (1) whether the ultimate issue to which the extraneous misconduct was relevant, was seriously contested by the defendant; (2) whether the State had other convincing evidence to establish the ultimate issue; (3) whether the probative value of the extraneous misconduct evidence was, particularly compelling; and (4) whether the extraneous misconduct was of such a nature that a jury instruction to disregard it except for its proffered purpose, would not likely have been effective. *Montgomery* 810 S.W.2d at 393. We conclude that the probative value in this case was not substantially outweighed by

unfair prejudice.

Reviewing the record in light of these factors, we first conclude that the ultimate issue to which the evidence related, Appellant's claim of self-defense, was seriously contested. It was reasonable for the trial court to find that the probative value of the evidence was compelling. By linking the shell casings from the two scenes, the State refuted Appellant's claim of self-defense. The fact that the shell casings were linked together, was particularly compelling because it indicated that Appellant could have been the aggressor and/or possessed a gun used to shoot Mr. Schermer. In addition, the court's limiting instruction was sufficient for a jury to disregard the evidence for any but its proffered purpose. Under these facts, the trial court did not abuse its discretion by admitting evidence of Appellant's extraneous misconduct. Thus, the answer to question two is, yes.

Finally, Appellant contends that the admission of the extraneous evidence constituted reversible error because Appellant was not convicted of a crime related to the first shooting. Appellant's argument is mistaken because that is no longer the law in Texas. In two 1994 cases, the Texas Court of Criminal Appeals declared that the burden of proof for the admission of extraneous offenses in Texas is proof beyond a reasonable doubt. *George v. State*, 890 S.W.2d 73, 76 (Tex.Crim.App. 1994)(holding that the standard of proof for admitting an extraneous offense is beyond a reasonable doubt); *Harrell v. State*, 884 S.W.2d 154, 159-60 (Tex.Crim.App. 1994). The record reflects that the trial court's limiting instructions to the jury were in accordance with the law set out by the Texas Court of Criminal Appeals. Specifically, the court instructed the jury that they could not consider the extraneous evidence for any purpose unless they found and believed beyond a reasonable doubt that the defendant committed such other

offenses, wrongs, or acts, if any were committed, and even then they may only consider the same in determining the intent or knowledge of the defendant, if any, alleged against him in the indictment in this case, and for no other purposes.

Having reviewed the record, we hold that the trial court's decision to admit the extraneous evidence did not lie outside that zone within which reasonable persons might disagree, and did not abuse its discretion. Therefore, Appellant's issue is overruled.

Having overruled all three parts of Appellant's issue, we affirm the trial court's judgment.


October 30, 2008
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)